David N. JUDELSON and Oscar I. Judelshon, Inc., Plaintiffs,

v.

David L. LADD, Commissioner of Patents, Defendant.

Civ. A. No. 1880–62.

United States District Court
District of Columbia.

June 9, 1964.

**310**

————◇————

Ben Cohen, Washington, D. C., Morton Amster, Amster & Levy, New York City, for plaintiffs.

Clarence W. Moore, Solicitor, U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was instituted pursuant to 35 U.S.C. § 145 seeking judgment authorizing the defendant, Commissioner of Patents, to grant Letters Patent of the United States on application Serial No. 722,301 entitled "CUTTING MACHINE" filed March 18, 1958, by the plaintiffs, David N. Judelson, and Oscar I. Judelshon, Inc.

The device described in the application relates to a machine for cutting long rolls of cloth and the like into short or narrow rolls. The invention sought to be protected resides essentially in making a known manually operated machine for which plaintiffs already have a patent capable of automatic operation.

The manually operated machine consists of a frame upon which is supported a stationary shaft which receives a roll of material wound on a core with the roll of material being rotated about the stationary longitudinal axis provided by the supporting shaft by means of a driven chuck which is powered from a motor. A circular rotary knife is mounted on a carrier and rotates about its own axis at a high speed and is movable by hand toward and away from the stationary supporting shaft by a machine operator who manipulates a handle. The knife carrier, in turn, is mounted on a carriage which can be moved from one side of the machine to the other by the operator, and can be indexed by hand into successive positions wherein the knife is advanced through its cutting cycle relative to the roll. The distance between successive index positions determines the width of the roll strip to be cut.

The invention at bar discloses the basic apparatus of the manual machine with added devices for making the operation of the machine almost fully automatic. One of these devices is a variable speed drive unit capable of moving the knife arm toward and away from the roll to be cut at four different rates of travel. This unit includes an electric brake and an alternating current drive motor having a selectively energizable eddy current clutch and an internal electronic control. The specific speed output at the motor shaft (and hence the rate of travel of the knife) depends upon the energy applied to the eddy current clutch.

Also provided is apparatus for coupling the clutch to the knife arm to move the latter at a relatively high speed toward the roll to be cut, a sensing device which is adjustable in accordance with the diameter of the roll for sensing the position of the knife with relation to the roll's periphery, and means responsive to the sensing means for energizing the electric brake and deenergizing the electric clutch

to slow down or stop the travel of the knife arm toward the roll for a prescribed time interval. After this time interval the electric brake is deenergized and the clutch is energized in a manner that allows the knife-arm then to penetrate into the outer periphery of the roll at a relatively low speed. After a certain additional time interval, further means move the knife arm through the remaining portion of the cutting stroke at an increased speed. When the knife completes its stroke the clutch, in response to further sensing means, withdraws it at a relatively high rate of travel to an inoperative position.

The application also discloses means for automatically moving the knife carriage from one cutting position to another by virtue of an indexing mechanism in a manner permitting the width to which the narrow roll strips are cut to be varied. Sensing means responsive to the index movements of the carriage are also provided so the cutting cycle can be automatically initiated as soon as the indexing operation is completed. As the longitudinal movement of the carriage along the roll carries it into the vicinity of the chuck, devices responsive to this movement are provided both for establishing a slower rate of travel for the knife arm in its cutting cycle, and for stopping the carriage independently of the action of the indexing mechanism.

Numerous claims were presented to the Court for its consideration. The issues posed, however, are sufficiently represented by claims 6, 11, 14, 34 and 42. These claims read as follows:

*Claim 6.*

In a cutting machine, roll-supporting and turning means adapted to support and turn a roll of material on its axis, a cutter assembly, means mounting said cutter assembly for movement through a forward stroke toward said roll supporting and turning means and for a return stroke away from said roll supporting and turning means, drive means operatively connected to said cutter assembly for moving said cutter assembly at a relatively high rate of travel for approach to said roll, means responsive to movement of said cutter assembly through a first portion of said forward stroke for moving said cutter assembly at a lower rate of travel for penetration into said roll, and means responsive to movement of said cutter assembly through a further portion of said forward stroke for moving said cutter assembly at a higher rate of travel for cutting said roll.

*Claim 11.*

In a cutting machine including a roll supporting and turning mechanism for supporting a roll of material wound on a core and for turning said roll about its axis and a carrier including a rotary cutting knife movable through a cutting cycle having a forward stroke in which said rotary cutting knife approaches, penetrates and cuts transversely through said roll and core and a return stroke in which said knife retracts from said roll and moves to a clearance position, the improvement comprising a variable speed actuating and controlling unit operatively connected to said carrier for moving said carrier through said cutting cycle at different rates of speed, said unit including a drive motor having a selectively energizable electric clutch and brake, means coupling said clutch to said carrier to move said carrier through said forward stroke at a relatively high speed for rapid approach to said roll, sensing means adjustable in accordance with the diameter of said roll and operable in response to the approach of said carrier to a roll-penetrating position for said knife relative to said roll, means responsive to operation of said sensing means for energizing

said electric brake and deenergizing said electric clutch for a prescribed time interval, and means operable after said prescribed time interval for deenergizing said electric brake and energizing said electric clutch to move said carrier through a further portion of said forward stroke for a further prescribed time interval at a relative low speed for penetration into said roll.

## Claim 14.

In a cutting machine including a roll supporting and turning mechanism for supporting a roll of material wound on a core and for turning said roll about its axis, a carriage movable longitudinally of said mechanism stepwise in accordance with the width of the cuts to be made in said roll, and a carrier mounted on said carriage and including a cutting knife movable during the dwell periods between successive stepwise movements of said carriage through a cutting cycle having a forward stroke in which said cutting knife moves inwardly from a retracted position and approaches, penetrates and cuts transversely through said roll and a core and moves outwardly from an advanced position through a return stroke in which said cutting knife retracts from said roll and moves into said retracted position, a variable speed actuating and controlling unit operatively connected to said carrier for moving said carrier through said cutting cycle, said unit including a drive motor having a selectively energizable electric clutch, sensing means responsive to said stepwise movement of said carriage for initiating said cutting cycle at the end of a time interval during which said knife remains in said retracted position for sharpening, and means operable at the end of said time interval for coupling said clutch to said carrier to move said carrier through said cutting cycle.

## Claim 34.

A cutting machine adapted for both manual and automatic operation comprising a frame, a stationary shaft on said frame adapted to receive and support a roll of material, a driven chuck at one end of said shaft engageable with said roll for turning said roll on its axis, a knife carriage, means mounting said knife carriage on said frame for longitudinal traversing movement toward a chuck end position adjacent said one end of said shaft, a traverse drive operatively connected to said knife carriage for moving said knife carriage toward and away from said chuck end position, an indexing mechanism on said knife carriage and selectively engageable with said frame for periodically stopping said knife carriage after successive traverse increments corresponding to the width of the cuts to be made on said roll, a knife carrier on said knife carriage, a knife on said carrier, means mounting said knife carrier for movement through a cutting cycle such that said knife is advanced toward said shaft, cutting through said roll and is retracted to a clearance position, a knife carrier drive, means responsive to operation of said indexing mechanism and in controlling relation to said knife carrier drive for initiating said cutting cycle after said knife carriage moves through said traverse increment, means responsive to movement of said carrier through said cutting cycle for resetting said indexing mechanism for the next incremental traverse upon completion of said cutting cycle, and means responsive to movement of said knife carriage into said chuck end position for stopping said knife carriage independently of the action of said indexing mechanism.

## Claim 42.

In a cutting machine, a roll-support shaft adapted to receive a roll of

material, a chuck at one end of said shaft adapted to engage and rotate said roll, a knife carriage, means mounting said knife carriage for longitudinal traversing movement toward a limit position adjacent the chuck end of said shaft, a traverse driving and indexing mechanism operatively connected to said carriage for moving said carriage stepwise toward said limit position, a knife carrier, means mounting said knife carrier on said carriage for movement through a cutting cycle relative to said shaft, an actuating mechanism operatively connected to said carrier and operable in the intervals between successive stepwise movements of said carriage for moving said carrier through said cutting cycle, means for establishing at least one prescribed rate of travel for said carrier during said cutting cycle, and means operable in response to approach of said carriage to said limit position for establishing a slower rate of travel for said carrier in said cutting cycle.

Originally, plaintiffs presented here claims 1 through 19, 33 through 35, 41 through 44, 49 through 52, and 54. Before the Court, plaintiffs withdrew claims 1 through 5, 7, 10, 12, 33, 41, 52 and 54.

All of the claims originally presented were rejected by the Examiner both on the ground of multiplicity and as unpatentable over the prior art. The Board of Appeals affirmed the rejection on multiplicity, but reversed the rejection of claims 35, 43, and 44 on prior art. It affirmed the Examiner's prior art rejection of claims 1 through 19, 33, 34, 41, 42, and 49 through 52

Counsel for defendant conceded at trial that in view of plaintiffs' reduction in the number of claims before the Court, the Examiner's rejection on the ground of multiplicity may have been avoided. The Court agrees, and so finds. Accordingly, claims 35, 43 and 44 are allowable, and only claims 6, 8, 9, 11, 13 through 19, 34, 42, and 49 through 51 are before the Court for adjudication on their merits.

The latter claims were rejected by the Patent Office on their merits as unpatentable over a patent to Groh, No. 2,186,-583. Claims 49 through 51 were also rejected on the additional ground of being unpatentable over the patent to Judelson, No. 2,457,310, which is devoted to his manually operated cutting machine.

The Groh patent discloses an automatically controlled cutting machine for cutting narrow rolls from long rolls of adhesively coated fabric such as the reinforcing tape used by shoe manufacturers. In this machine the long roll of material is incrementally moved in a direction parallel to its longitudinal axis and perpendicular to the stationary plane of movement of a pivotally mounted arm which carries a rotating cutting knife. After each movement of the roll, the knife is automatically moved through a cutting cycle by a cam which is operated in conjunction with the movement of the roll. After each cutting cycle the roll is moved forward by an automatic indexing mechanism. The distance from one index position to the next equals the width of the roll strip to be cut. The cam which controls the movement of the knife arm is contoured so the knife will move toward the roll at a rapid rate, but then reduce its approach speed just prior to entering the outer periphery of the material. There is no statement in the patent that the rate of entry of the knife into the material can be adjusted to allow for rolls of varying diameter without replacement of the cam. The Groh patent also discloses means for adjusting the effective stroke of the knife arm to compensate for the decreased diameter of the knife blade due to wear.

It appears to the Court the issues presented by the claims serve to divide them into four groups. Claims 6, 8 and 9 set forth, in broad language, the mode of operation of the knife as it is moved through its cutting stroke at different rates of speed.

Claim 14 relates to movement of the knife relative to the roll rather than movement of the roll relative to the knife, as in the patent to Groh.

Claims 11, 13, and 15 through 19 delineate the feature of plaintiffs' automatic device which varies the speed of movement of the knife while at the same time providing for accommodation of rolls having different diameters. These claims also require that the devices used to vary the speed of movement of the knife toward and away from the work are *sensing* means, connoting that the position of the knife is capable of being *detected* at a plurality of positions. These claims also prescribe that the knife arm is actuated by the motor and clutch driving means which in turn are selectively energized and deenergized by the sensing devices.

Claims 34, 42, and 49 through 51 do not relate directly to the various speeds of travel at which the knife approaches the work, but instead set forth the manner in which the movement of the carriage and the travel of the knife may be altered in a manner contingent upon the proximity of the knife and carriage to the chuck.

The main issue involved in all of the claims can be stated broadly to be whether or not it would be obvious to a person skilled in the art of designing automatic machinery to render the plaintiffs' manually operated machine automatic in the manner in which the claims specify. The relatively large number of somewhat similar claims has lead the Court painstakingly to examine both the extent to which such automatic operation may be unobvious, and also the extent to which any unobvious aspects may be set forth in the claims.

The experts in the Patent Office have maintained that to provide conventional sensing devices and the accompanying circuits necessary to translate signals from these devices into variations in the operations of the machines these devices are designed to control has now become so conventional as to be within the skill of an ordinary person familiar with the art.

The general thrust of this contention by the Patent Office is well taken by the Court in view of today's common usage of automatic machinery controlled by devices similar to plaintiffs'. The Court believes, however, that plaintiffs should receive patentable credit insofar as their particular arrangement of such devices has been accomplished in an unobvious way.

Turning first to consideration of claims 6, 8 and 9, it appears to the Court that they do little more than specify that means are provided for moving the knife up to the outer-periphery of the roll at a first speed, moving the roll into the outer portion of the work piece at a second speed, moving the knife through the remainder of the work piece at a third speed, and then retracting the knife from the work at a fourth speed. The apparatus for accomplishing this movement was set forth mainly as "means" which were said to be "responsive to movement of * * * (the) knife".

The Board of Appeals stated that such "means", as broadly stated, were inherent in the *manually* operated prior art machine of plaintiffs' since movement of the knife at these various speeds could in fact be accomplished by the operator himself using the manual controls already provided. The Board also stated that the concept of providing these various speeds was taught by the patent to Groh since the approach rate of his knife was indeed varied automatically by a cam so as to allow the knife to enter the work at a speed lower than the speed at which the knife originally approached it. The Court agrees with these contentions of the Board. These "means" are indeed so broadly stated as to be within the capabilities of the manual machine of Judelson and, even not withstanding that, it would seem that to further vary the contour of Groh's cam to achieve the various

speeds involved would be obvious to persons familiar with the art.

Claims 11, 13, and 15 through 19 set forth sensing means which detect the proximity of the knife to the workpiece in a manner which permits the speed at which the knife approaches the workpiece to be materially reduced prior to entrance of the knife into the work itself. These claims, more specifically, state that the sensing means energize an electric brake and deenergize an electric clutch for a prescribed time interval so the movement of the knife toward the work can be virtually halted. Additional means are set forth for then deenergizing the brake and energizing the clutch to move the carriage through a further portion of the forward stroke for a further prescribed time interval at a relatively low speed. The claims also require that the sensing means be adjustable so the machine can successfully accommodate rolls with differing diameters. The Court is unable to find any suggestion of a sensing means in the prior art used in a manner rendering a machine such as Judelson's both automatic and capable of accommodating rolls of differing diametrical size.

The Patent Office has suggested that this latter feature is met by the adjustment means utilized by Groh to compensate for wear upon Groh's knife. That suggestion was effectively rebutted, however, by expert testimony given at trial. It was shown that the cam and related devices of Groh could not be modified to produce such a result. While in the opinion of the Court it would perhaps be obvious to modify the contour of Groh's cam to obtain a series of different approach speeds for the knife, it does not appear to the Court that it would be obvious to completely substitute another automatic arrangement which would supply the additional advantage of accommodating rolls of various sizes. All the evidence taken together on this point has convinced the Court that this improvement could not have been suggested by Groh even to persons skilled in the art.

Claim 14 is not directed to the sensing means for varying the approach speed of the knife in a manner allowing for rolls of varying diametrical size, but relates solely to the movement of the carriage as it is indexed longitudinally with respect to the roll. The Board of Appeals held that it would be obvious to move the knife relative to the roll in view of Groh's teaching of moving the roll relative to the knife. The claim itself sets forth little more than the index movement plus a statement that the cutting cycle is automatically initiated at a certain time interval after the indexing movement has been completed. It does not seem to the Court that this statement is sufficient to distinguish plaintiffs' device from that of Groh in a patentable sense. Groh automatically initiates his cutting cycle after the *roll* indexes. Without further specifying the apparatus which causes any difference between such automatic operations than appears in the claim, the Court cannot say the experts in the Patent Office were wrong in holding this difference to be obvious to persons skilled in the art.

Claims 34, 42, and 49 through 51 also do not call for the sensing means which regulates the approach speed of the knife in a manner contingent upon the position of the knife and the diameter of the work piece, but merely recite the automatic indexing features of the knife carriage and that the carriage may be stopped as it approaches the chuck by an apparatus which can be operated independently of the indexing mechanism. Claim 42 goes a step further, and specifies that means are provided for establishing a slower rate of movement of the knife toward the work as the carriage approaches the chuck.

It appears to the Court that a bare recitation that means exist for disengaging the carriage independently of the indexing mechanism does not go far beyond the manually operated machine for which plaintiff Judelson has already received a patent. It further seems that provision

of such means would be suggested to those skilled in the art by the patent to Groh since the latter discloses a safety device (page 4, column 1, lines 1–38) for halting relative movement between the knife and the chuck in order to prevent them from colliding, and also a handwheel for effecting relative movement between the roll and the knife when the automatic indexing mechanism is not being used.

Similarly, the statement in Claim 42 that the machine includes "means" which are "operable in response" to the approach of the knife toward the chuck "for establishing a slower rate of travel" of the knife toward the roll also seems within the general scope of Judelson's manually operated machine. When this machine is utilized, the "means" are "operable" by the operator himself "in response" to the travel of the carriage toward the chuck "for establishing a slower rate of travel" of the knife for the simple reason that the operator may use the manual controls to regulate the approach speed of the knife toward the work in any manner and at any time he wishes. If any patentable novelty resides in the particular arrangement the plaintiffs have devised for rendering this feature automatic, it has not been set forth by the language of the claims.

The Court cannot say the evidence revealed error on the part of the Patent Office in rejecting this last group of claims as not patentable over the prior art.

After weighing the evidence presented at trial, examining the record in the Patent Office, and reviewing the briefs of the parties, it is the opinion of the Court that the totality of the evidence requires a finding for the plaintiffs as to Claims 11, 13, 15 through 19, 35, 43 and 44.

■■ Accordingly, the Commissioner of Patents is authorized to issue a patent containing Claims 11, 13, 15 through 19, 35, 43, and 44, and the Complaint will be dismissed as to Claims 1 through 10, 12, 14, 33, 34, 41, 42, 49 through 52, and 54.

The above Opinion contains Findings of Fact and Conclusions of Law.